UNITED STATES of America, Appellee,

v.

Armando JIMENEZ–RIVERA,
Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Jose Francisco RIVERA–LOPEZ,
Defendant, Appellant.

Nos. 87–1594, 87–1595.

United States Court of Appeals,
First Circuit.

Heard Feb. 2, 1988.

Decided March 24, 1988.

546

Rafael F. Castro Lang, San Juan, P.R. by Appointment of the Court, for defendant, appellant Armando Jimenez–Rivera.

Frank D. Inserni, Hato Rey, P.R., by Appointment of the Court, for defendant, appellant Jose Francisco Rivera–Lopez.

Robert J. Erickson, U.S. Dept. of Justice, Washington, D.C., with whom Daniel F. Lopez–Romo, U.S. Atty., and Charles E. Fitzwilliam, Asst. U.S. Atty., Hato Rey, P.R., were on brief, for appellee.

Before TORRUELLA and SELYA, Circuit Judges, and CAFFREY,* Senior District Judge.

* Of the District of Massachusetts, sitting by desig-  nation.

CAFFREY, Senior District Judge.

In April, 1987, the defendant-appellant Jimenez Rivera pled guilty in federal district court to aiding and abetting arson that resulted in death. Defendant-appellant Rivera Lopez pled guilty to procuring commission of arson that resulted in death. The district court sentenced Rivera Lopez to 99 years imprisonment, and sentenced Jimenez Rivera to 75 years. Both defendants now appeal these sentences.

## I. *Background*

On December 31, 1986, the appellants and a third codefendant started a fire in the ballroom of the Dupont Plaza Hotel in Santurce, Puerto Rico. At the direction of a third codefendant, Escudero Aponte, appellant Jimenez Rivera obtained a can of sterno, and gave it to Escudero. Jimenez and appellant Rivera Lopez then stood so as to hide Escudero while he lit the can of sterno. Their purpose in starting the fire was to put pressure on the hotel management, against whom the defendants' union was engaged in a labor strike. Tragically, the fire spread rapidly through the hotel, killing 97 people.

Pursuant to a plea agreement, appellant Jimenez Rivera pled guilty to aiding and abetting arson that resulted in death, a violation of 18 U.S.C. § 844(i). Appellant Rivera Lopez similarly pled guilty to procuring arson that resulted in death, also a violation of 18 U.S.C: § 844(i). The district court accepted these pleas.

At the sentencing, in return for their guilty pleas and continued cooperation in the arson investigation, the government recommended a maximum penalty of 25 years imprisonment for Rivera Lopez, and 24 years imprisonment for Jimenez Rivera. At this hearing, counsel for Rivera Lopez challenged a number of statements in the probation office's presentence investigation report ("PSI"). The court stated that it would rely basically on the details that were recorded when the plea of guilty was accepted, and on its own judgment of matters as it perceived them.

The court then considered the crimes involved in this case. In support of his recommended sentence for Jimenez Rivera, the Assistant U.S. Attorney noted that, while technically guilty of the same crime as the others, Jimenez Rivera's actual participation in the events leading up to the fire was significantly less than the others. In response, the court analogized the defendants' crimes to felony murder. Using the felony murder rules as a frame of reference, the court concluded that Jimenez Rivera, who merely obtained the sterno, was equally as culpable as the defendant who lit the sterno. The court also noted that the defendants' crimes are very similar to another case in which the defendant was convicted of first degree murder.

The court concluded by saying,

The Dupont Plaza tragedy transcends the four walls of this courtroom, I think. This was something that simply we could not afford, and it happened. And it reminds me of how many times we as citizens have seen in the past, telephone lines being cut off when there is a labor dispute, electric lines and towers being thrown down when there is a dispute, water lines being cut upon when there is a labor dispute. What happens? Negotiation continues, labor and management get in bed together, that's what happened. These acts are forgotten. As a matter of fact, as I see it today, it seems to me that it is kind of accepted, kind of an acceptance that, in order to negotiate adequately, when there is a labor dispute, you are entitled to do things like the one that happened in this case. I mean, I bet you that when somebody throws down a telephone line or an electric tower, they don't think in terms of what can happen, they just want to cause damage to the management side, and as a result of that, try to get some negotiations out of them. But many things could occur and this is exactly what happened in this case, in my view.

I don't think that any of these persons here before us, wanted to kill ninety-seven persons. I agree. I don't think they wanted to do that. But I think that anybody that has intelligence enough to get out in the morning, out of his bed and go to work, without more, knows that when you set a fire in a place like a hotel, or a house, or a restaurant, one of the possibilities is that serious injury or death can result. It seems to me that if you ask a 12 year old child, what can happen if you set fire in this place right now, he can tell you many things as to what can happen. And therefore, I don't think that I am going to become—or let's put it this way, I cannot sanction such a thing. And I cannot become one of those who, outside of the walls of this courtroom, may say, "Well, that is a valid way to go about to bring the desired results. That is the tough way of doing it. And sometimes it has to be done that way." I just cannot do it that way.

I just cannot accept it, because I think that Puerto Rico cannot and is not willing to accept one more senseless murder, is not willing to accept one more shipment of drugs, is not willing to accept one more terrorism act. We are simply fed up with these things as citizens.

The Dupont Plaza tragedy is a tragedy not only to the defendants but is a tragedy to the persons who lost relatives there. It is a tragedy also to Puerto Rico, to the nation and to the world. That is my perception of it and I want the record to state it, to contain it, because I think that is exactly what happened. We can dress it up. We can say this, we can say that, but when we go to the bottom line the fact is that three persons, and I know that possibly many more, took the calculated risk of doing what they did. Of course, not wanting to kill ninety-seven persons, but with knowledge of the fact that some consequences could arise as a result of this. And it is very difficult for me to accept that the consequence of potential death did not cross the minds of the participants. That is my own opinion. I am as sincere as I can be.

The Court then sentenced Rivera Lopez to 99 years imprisonment, recommended that he undergo psychiatric evaluation and treatment, and be afforded all opportuni-

ties for education, vocational training, and rehabilitation. The court sentenced Jimenez Rivera to 75 years in prison, and made the same recommendations as to training and psychiatric care.

## II. *Discussion*

The appellants argue that the district court abused its discretion in sentencing them. The appellants contend that the court's remarks at sentencing indicate that the court improperly focused on the severity of the crimes to the exclusion of individual, mitigating factors. This approach, they argue, resulted in a mechanistic sentencing.

■ In challenging their sentences, the appellants bear a very heavy burden, since the trial court has very broad discretion in sentencing. *Wasman v. United States*, 468 U.S. 559, 563, 104 S.Ct. 3217, 3220, 82 L.Ed.2d 424 (1984). As such, the trial court's sentence will be overturned only in exceptional cases. *United States v. Samalot Perez*, 767 F.2d 1, 5–6 (1st Cir.1985). Indeed, the general rule is that when the sentence is within statutory limits, it is not subject to review by an appellate court. *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *United States v. Pasarell*, 727 F.2d 13, 17 (1st Cir.), *cert. denied*, 469 U.S. 826, 105 S.Ct. 107, 83 L.Ed.2d 51 (1984).

■ This court has recognized, however, a narrow exception to this general rule. This court will overturn a sentence where the facts indicate that the court below adopted a rigid, mechanistic approach to sentencing, and failed to consider the individual mitigating circumstances of each defendant. *United States v. Wardlaw*, 576 F.2d 932, 938 (1st Cir.1978). *See also United States v. Foss*, 501 F.2d 522, 527–29 (1st Cir.1974). A judge is required to use his or her discretion and individualize the sentence of each defendant. This duty does not, however, prevent a judge from emphasizing considerations such a severity of the crime or the deterrent effect of a harsh sentence. As we noted in *Foss*,

the court's duty to individualize the sentence simply means that, whatever the judge's thoughts as to the deterrent value of a jail sentence he must in every case reexamine and measure that view against the relevant facts and other important goals, such as the offender's rehabilitation. Having done so, the district judge must finally decide what factors, or mix of factors, carry the day. While the judge's conclusions as to deterrence may never be so unbending as to forbid relaxation in an appropriate case, they may nonetheless on occasion justify confinement although other factors point in another direction.

*Foss*, 501 F.2d at 528.

■ We are satisfied that the district court fulfilled its duty to individualize the appellants' sentences. While the judge's comments at sentencing indicate that he placed great emphasis on deterrence and on the deadly results of the appellants' actions, they do not indicate that he failed to consider the individual circumstances of each defendant. To the contrary, the judge's concern over the deaths that resulted from their crime indicates that he determined the sentence in reference to the particular actions of the appellants. The record also shows that a presentence report on each appellant had been prepared, and was reviewed by the judge. The attorneys for the appellants were given the opportunity to, and did, bring all mitigating circumstances to the attention of the judge prior to sentencing. The court, therefore, was well aware of the individual circumstances of each appellant. The fact that appellant Jimenez Rivera received 75 years while appellant Rivera Lopez received 99 years strongly suggests that these individual circumstances were taken into account. While the court did impose sentences that were three and four times longer than those requested by the government, the sentences were still less than the maximum allowed by law.[1] Finally, there is no indication that the judge imposed uniform sen-

---

1. Section 844(i) provides that if death results from the arson, the defendant may be sentenced to life imprisonment or death. 18 U.S.C. § 844(i).

tences for a given type of crime. *Compare United States v. Barker*, 771 F.2d 1362 (9th Cir.1985) (concluding that the district court failed to individualize sentences where the judge's comments, and the uniform, maximum sentences for various defendants indicate that the sentence was determined solely in reference to the category of the crime). As we noted in *Foss*, the appellants' true complaint is not that the court failed to exercise its discretion. Their real complaint is that in exercising its discretion, the court chose to emphasize factors which the appellants dislike. *Foss*, 501 F.2d at 529. This court will not review decisions of this nature.

■ The appellants next contend that the district court imposed a heavy sentence as punishment for past crimes committed by members of labor unions. Using the appellants as "instruments of retaliation" against other criminals, appellants argue, is an abuse of discretion.

In *United States v. Wardlaw*, 576 F.2d 932, upon which appellants principally rely, we set aside the sentence of two defendants convicted of importing cocaine. The district court concluded that the defendants were merely drug carriers rather than dealers. Moreover, the defendants had no prior arrests, and had excellent records as young medical students. Despite these mitigating factors, the court imposed harsh sentences on each defendant. *Id.* at 937. The court's reasoning for imposing such harsh sentences was that by meting out harsh sentences to all drug couriers, people would be less willing to act as couriers. This, in turn, could force the dealers to smuggle the drugs themselves, thus exposing themselves to arrest. *Id.* at 939. In vacating the sentences, we noted,

> While sentencing judges have considerable discretion in sentencing, they may not relentlessly pursue at a defendant's cost a single, questionable theory while simply brushing aside all the other criteria commonly weighed by the vast majority of sentencing courts. Defendants were entitled to have their sentences set primarily in terms of the seriousness of

their own crimes and associated individual factors. They were not to be viewed chiefly as instruments of retaliation against other, different criminals.

*Id.*

The appellants argue that in this case, as in *Wardlaw*, the judge attempted to punish others by imposing harsh sentences on the defendants. This is an incorrect view of both cases. In *Wardlaw*, the judge was not trying to punish the drug dealers by sentencing their couriers. Rather, the judge was attempting to force the dealers to smuggle drugs themselves. The judge assumed that if he sentenced all couriers harshly, no one would want to act as couriers. There was no indication, though, that this deterrence would be so effective that the dealers would be forced to smuggle the drugs themselves. Our holding confirmed that a theory as questionable as this may not form the sole basis for sentencing. *Id.* at 938.

In this case also, the judge was not attempting to punish others by imposing harsh sentences. The judge was understandably concerned with the amount of labor-related crime, and sentenced the appellants with a view towards deterring such crime. Unlike the questionable theory adopted by the judge in *Wardlaw*, deterrence is a common and permissible consideration in sentencing. *See, e.g., Foss*, 501 F.2d at 528; *United States v. Gomez*, 797 F.2d 417, 420 (7th Cir.1986). The district court did not, therefore, base the appellants' sentences on improper considerations.

In a similar argument, the appellants contend that the judge imposed harsh sentences as punishment for crimes that were not before the court. Specifically, the appellants argue that the judge viewed their crime as first degree murder, and sentenced them based on that crime.

■ The appellants misconstrue the judge's comments. To begin with, the court expressly noted that the murder charges were not before it.[2] The court discussed first degree murder only as a

---

2. The appellants were also charged with second    degree murder in the state court.

frame of reference for determining the relative degrees of culpability of the appellants and the relative seriousness of the appellants' crimes. Not only was it proper for the judge to consider these factors when sentencing, the judge was required to consider them in order to individualize the sentences of the appellants, as discussed above. Moreover, even if the court had been considering the fact that the appellants' crime constituted first degree murder, such consideration would not necessarily have been improper. Under 18 U.S.C. § 3577,[3] the trial judge may consider an almost unlimited range of information when imposing a sentence, including information relating to crimes of which the defendants have not been convicted. *United States v. Kimball*, 741 F.2d 471, 474–75 (1st Cir.1984). For these reasons, we conclude that the district court did not err in determining the sentences of the appellants.

■ Appellant Rivera Lopez also claims that the district court erred by failing to address allegedly false statements contained in the presentence report.[4] Fed.R. Crim.P. 32(c)(3)(D) provides:

(D) If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission.

At the sentencing, the appellant challenged a number of statements in the presentence investigation report ("PSI"). First, the PSI stated that the appellant was a "driving force" behind the fire. The defendant argues that this is incorrect. Second, the PSI noted that the appellant's plan was to force the hotel management, through a number of acts of sabotage, to accept the demands of the union. The defendant argues that this statement was untrue and inaccurate. Third, the PSI suggested that the appellant had dropped out of school because of lax discipline. The appellant, however, argued that he left school in order to support his family. Fourth, the PSI stated that appellant's ex-wife divorced him for cruel and unusual treatment. Appellant claimed that his ex-wife had simply relied upon the most expedient grounds for divorce. Fifth, the appellant challenged the PSI's conclusion that appellant was an "easily agitated and problematic person." Lastly, the appellant objected to the conclusion in the PSI that appellant should be afforded psychiatric counseling. The appellant argued that there was no indication he was suffering from any mental disorders.

In light of these alleged inaccuracies, the appellant contends that the judge was required under Fed.R.Crim.P. 32(c)(3)(D) to make a finding as to each allegation, or to make a determination that the controverted matter was not taken into account in sentencing. Since the court failed to comply with the requirements of Rule 32(c)(3)(D), the appellant argues, he must be resentenced.

Rule 32(c)(3)(D) was promulgated, in part, to assure that the defendant is not prejudiced in the future by any factual errors in the PSI. *United States v. Santamaria*, 788 F.2d 824, 829 (1st Cir.1986). As the Advisory Committee note on the rule states, the PSI is heavily relied upon by the Bureau of Prisons and the Parole

---

**3.** 18 U.S.C. § 3577 provides that:
No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

**4.** There is no claim that appellant Jimenez Rivera challenged any statements in his presentence report. Accordingly, we do not consider Jimenez Rivera's sentence in regards to this issue.

Commission in making critical determinations relating to custody or parole. *Id.; United States v. Eschweiler*, 782 F.2d 1385, 1387 (7th Cir.1986). To assure accuracy in later decision making, the requirements of the rule must be literally complied with, and failure to do so will result in a remand to the district court. *United States v. Bradley*, 812 F.2d 774, 782 (2d Cir.), *cert. denied*, — U.S. ——, 108 S.Ct. 107, 98 L.Ed.2d 67 (1987).

The government argues, however, that several of the challenged statements are statements of the parole officer's opinions, rather than statements of fact. Such statements, the government contends, are not covered by the rule. The Eighth Circuit Court of Appeals has noted that statements of opinion, or statements that are technically true but create a false impression, do not trigger the requirements of Rule 32(c)(3)(D). *See Poor Thunder v. United States*, 810 F.2d 817, 825–26 (1987). That court expressed concern that to interpret the rule otherwise would be to turn the rule into a vehicle for verbal quibbles or argumentation about phrasing. *Id.* at 826. While the danger of such abuse certainly exists, that danger may sometimes be outweighed by the importance of assuring that all information contained in the PSI is accurate. Subtle distortions resulting from incompleteness, innuendo, or ambiguity can be as prejudicial to the defendant as patently inaccurate facts. Stephen A. Fennell and William N. Hall, *Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts*, 93 Harv.L.Rev. 1613, 1629 (1988). In this case, the controverted opinions were the statements that the appellant was the driving force behind the fire, and that the appellant was an easily agitated and problematic person. Taken at face value, these statements might arguably have some potential for adversely affecting appellant at sentencing, or later. The question, under *Poor Thunder*, is close. But we need not answer it—nor, indeed, determine whether *Poor Thunder* does or does not reflect this circuit's view of the applicable law. Inasmuch as the second, third, and fourth statements which appellant challenged, *see supra*, are indubitably matters of fact (as opposed to opinion) even under the *Poor Thunder* formulation, remand will, as we explain below, be required. Thus, since there will be a remand in any event, the practical approach is to treat these two statements, out of an abundance of caution, as also covered by Rule 32(c)(3)(D).

The last statement challenged by the appellant, recommending psychiatric counseling, however, is not covered by the requirements of Rule 32(c)(3)(D). This "statement" was a recommendation by the parole officer as to the appellant's sentence. Such a recommendation is directed to the court at the time of sentencing, and will have no effect on future custody decisions. Clearly, Rule 32(c)(3)(D) was not intended to apply to the sentencing recommendations in the PSI. *See* Notes of Advisory Committee on 1983 Amendment to Rule 32.

As to the statements other than the last one noted, the requirements of the rule applied. The allegations of inaccuracy were before the court at sentencing. There is no indication that the court made any findings as to the accuracy of the challenged statements. The next question, then, is whether the court relied upon the controverted statements. When presented with the allegations, the court stated

The Court, when sentence is imposed, relies basically on the details, which we record when the plea of guilty was accepted; and on our judgment of matters as they are perceived by the Judge, irrespective of what it is that the probation officer states. So, in this sense, I am not dissuaded or convinced one way or the other when I read a presentence report. This is simply factual information that is gathered for the benefit of the Judge and the parties and also for the benefit of the Justice Department. But basically speaking, it would be unfair to say that somebody is sentenced simply because a presentence report says something or fails to say something.

Based on these comments, we are unable to determine whether the district court relied on the statements. Moreover, even if the

comments clearly indicated that the court did not rely on the statements at issue, the court failed to append a written record of such a determination to the PSI. In either case, the district court failed to comply with Rule 32(c)(3)(D) in sentencing Rivera Lopez. The appropriate remedy in situations such as this, however, is not resentencing. Rather, his case should be remanded to the district court for clarification of its reliance on the statements to which the rule applies. If the district court indicates that it did not rely on the disputed information when sentencing the appellant, it should make a written determination to that effect, and append this disclaimer to the PSI. If, on the other hand, the court indicates that it relied to any extent on the disputed information, it should vacate the sentence and hold a new sentencing hearing that complies with Fed.R.Crim.P. 32(c)(3)(D). *United States v. Serino*, 835 F.2d 924, 932 (1st Cir.1987).

The convictions of both appellants are affirmed. Appeal No. 87–1595 is remanded to the sentencing judge for further proceedings consistent with this opinion.