**UNITED STATES, Appellee,**

v.

**Jose HANONO–SURUJUN, Defendant, Appellant.**

**No. 90–1187.**

United States Court of Appeals, First Circuit.

Heard July 31, 1990.

Decided Sept. 12, 1990.

Benedict P. Kuehne, with whom Benson B. Weintraub, Sonnett Sale & Kuehne and Mark A. Levine, Miami, Fla., were on brief for defendant, appellant.

Danielle DeFranco, Atty., U.S. Dept. of Justice, with whom Daniel F. Lopez–Ramo, U.S. Atty., Margaret Grove, Guillermo Gill, and Everett M. de Jesus, Attys., Narcotic and Dangerous Drug Section, U.S. Dept. of Justice, were on brief for appellee.

Before CAMPBELL and SELYA, Circuit Judges, and BOWNES, Senior Circuit Judge.

BOWNES, Senior Circuit Judge.

This is an appeal from a sentence based on an upward departure from the applica-

ble sentencing guideline. Defendant-appellant Jose Hanono–Surujun presents four issues on appeal. Because we find that appellant must be resentenced because of the district court's failure to comply with Fed. Rule 32(c)(3)(D), we do not consider the other issues.[1]

### THE PLEA

Defendant and forty co-defendants were charged in a forty-count indictment with violations of federal narcotics, firearms and racketeering laws. Defendant was named in three counts: one, thirty-seven and thirty-eight. Count One charged defendant with being part of a conspiracy to distribute more than 50 kilograms of marijuana and more than one kilogram of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Counts thirty-seven and thirty-eight charged that defendant, aided and abetted by other co-defendants, imported into the United States and possessed with intent to distribute approximately 476 kilograms of cocaine in violation of 21 U.S.C. §§ 952 and 960, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

After approximately six weeks of trial, a mistrial was declared because of the decision of the United States Supreme Court in *Gomez v. United States*, —— U.S. ——, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), holding that the Federal Magistrates Act did not authorize district courts to delegate jury selection in felony trials to magistrates. The government then initiated plea bargaining with several defendants, including appellant. After some bargaining, appellant agreed to plead guilty to an information charging him with using a communication facility in facilitating an act constituting a felony in violation of 21 U.S.C. § 843(b). The act charged was making a telephone call to San Juan, Puerto Rico from Miami, Florida to discuss transporting, titling and obtaining license plates for two Chevrolet Silverado motor vehicles which defendant knew were to be used in

the importation of cocaine. The government dismissed the superseding indictment against the defendant in return for his plea to the information.

### THE SENTENCING

The presentence report (PSR or PSI) initially prepared by the probation department computed the total offense level at 8. It reported that defendant had no prior criminal convictions. Based upon these two factors, the report found that "the guideline imprisonment range is 2 to 8 months." Part F of the PSR stated that the "probation officer has not identified any information that would warrant a departure from the guidelines."

Sentencing was scheduled for December 1, 1989. At the start of the hearing, the government stated it had "problems with the total factual scenario that was written up in the presentence report." It asked for a continuance of the sentencing so that it could put its position in writing. The district court granted the continuance over the objections of defendant. The probation officer promptly prepared an addendum to the PSR based on information furnished by the trial attorneys for the government.

The addendum contained six paragraphs of factual details relative to defendant's participation in "the overall scheme involving Superseding Indictment No. 88–253."

Paragraph one states that defendant knew that the vehicles, whose use he arranged for by telephone, were to be used in a drug importation scheme. This is merely a repeat of the information to which defendant pled guilty.

Paragraph two states that defendant gave Claribel Castillo in Miami two firearms which were subsequently brought to Puerto Rico and given to Rafael Tormes. Paragraph three states that defendant met with others involved in the drug importa-

---

1. The other issues were: (1) whether the district court erred in departing upward from the applicable guidelines; (2) whether the sentence was greater than necessary to achieve the purposes of sentencing as expressed in the Sentencing Reform Act, 18 U.S.C. § 3553(a); and (3) whether the district court's allowing the government to note late objections to the presentence investigation report contrary to the provisions of Local Rule 418 of the District Court of Puerto Rico violated substantial rights of defendant.

tion conspiracy, that Rafael Tormes told Claribel Castillo that defendant would give her some firearms so she could take them to Puerto Rico and that one "long firearm" and a .357 caliber revolver was given her by Lazaro Diaz. These firearms were recovered by the government during a seizure of drugs in San Sebastian, Puerto Rico.

The next paragraph (4) is somewhat complicated. It states that Claribel Castillo attempted to contact Lazaro Diaz, as instructed by Rafael Tormes. When she was unable to do so, she contacted defendant and asked that he help her contact Lazaro Diaz. Lazaro Diaz subsequently got in touch with her and together they met with the pilot "who was contracted." Defendant was present at this meeting. The pilot asked for $50,000 in advance for his services. At this meeting, the details of the trip were planned. Paragraph five is a continuation of paragraph four. After the meeting was over, Claribel Castillo was taken home. She was picked up a short time later by defendant and taken to his family's place of business where the pilot was waiting for the $50,000 payment, which was delivered in the evening by Lazaro Diaz.

Paragraph six concludes the factual recitation. It states that Lazaro Diaz told Claribel Castillo to go to the Tamiami Airport in Miami, Florida to locate the airplane that was to be used in the drug importation scheme. She had difficulty locating the plane and contacted defendant who gave her directions and a description of the plane. The paragraph states that defendant was a friend and messenger of Lazaro Diaz. It is also stated that defendant obstructed justice by lying to federal agents investigating the purchase of one of the vehicles used in the drug importation conspiracy.

This part of the addendum concludes by reporting that the probation office had been advised by Attorney Guillermo Gil of the Department of Justice that the defendants in the case had been classified into four groups according to culpability: group one comprised those most culpable. Defendant was assigned to group three.

The PSR addendum found the total offense level to be 12 with a guideline imprisonment range of 10 to 16 months. The addendum concludes with a statement of factors that could warrant an upward departure from the guidelines.

Defendant filed a seven-page objection to the addendum in which he alleged factual inaccuracies in every paragraph of it. At the continued sentencing hearing, defense counsel argued at length (5 pages of transcript) that there were factual inaccuracies in the addendum and that the probation officer's inferences from the facts not in dispute were mistaken. The factual inaccuracies claimed by defendant can be summarized as follows: (1) no knowledge of the planned date of the drug importation; (2) no knowledge about the transportation of firearms to Puerto Rico; (3) no participation in any conspiratorial conversations or meetings; (4) no participation with the pilot in making plans as to the route to be used in bringing cocaine to Puerto Rico; (5) defendant did not bring Claribel Castillo to his family's place of business; (6) no knowledge of and no participation in a conversation between Claribel Castillo and Lazaro Diaz; (7) denial by defendant that he lied to federal agents about the purchase of a motor vehicle.

■ At the sentencing hearing, the district court made the following findings:

The court finds by the preponderance of the evidence that one, as to the necessary arrangements for the transportation of the two vehicles referred in the information in the testimony presented during the trial proceedings regarding the conspiracy in Criminal Case 88–253, establishes that the defendant was truly aware that said vehicles were to be used during the drug importation of 476 kilograms of cocaine on June 13, 1988 in San Sebastian, Puerto Rico, since he had spoken with several co-conspirators regarding statements on various occasions. Two, based on the testimony presented during the trial proceedings, the court finds that the defendant did on two occa-

sions participate in the arrangements for the transportation of fire arms [sic] to be shipped in Interstate Commerce specifically from Miami, Florida, to Puerto Rico. Said firearms having been seized during the drug importation scheme of June 23, 1988. Three, the court also determines that the defendant's presence and the use of the location of his family business to facilitate pending of the service of the pilot used in the subject importation and scheme, certainly is an aggravating role.

## APPLICATION OF THE RULE

Fed.R.Crim.P. 32(c)(3)(D) provides:

(D) If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, *as to each matter controverted,* make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons.

(Emphasis added).

We have insisted on a literal compliance with the Rule. *See United States v. Lyons,* 898 F.2d 210, 217 (1st Cir.1990); *United States v. Levy,* 897 F.2d 596, 598–99 (1st Cir.1990); *United States v. Jimenez–Rivera,* 842 F.2d 545, 551 (1st Cir.), *cert. denied,* 487 U.S. 1223, 108 S.Ct. 2882, 101 L.Ed.2d 917 (1988). No determination was made by the district court that any matter controverted would not be taken into account in the sentencing. Rather, the court made three findings; two of which were explicitly based on evidence introduced during the aborted trial. There is no specific reference in the findings to the PSR addendum or to the objections made by defendant. The first finding was that defendant knew that the vehicles, which

were the subject of the phone call, were to be used in the drug importation. Defendant, however, did not deny this, and indeed he could not, because that was what the information to which he pled guilty charged. Defendant only denied knowing the date of the importation. The court's first finding was based on the fact that "he [defendant] had spoken with several co-conspirators regarding statements on various occasions." Although this is somewhat ambiguous, we will construe it to mean that the judge found that defendant was privy to statements by others about importing cocaine into Puerto Rico.

The second finding is clear: that defendant on two occasions participated in arranging for the transportation of firearms to Puerto Rico.

In its third finding, the court stated that it "determines that the defendant's presence and the use of the location of his family business to facilitate pending of the service of the pilot used in the subject importation and scheme, certainly is an aggravating role." The court does not state whether this finding was based on the PSR addendum or evidence adduced at the trial, but its meaning is clear; the pilot went to the business premises of defendant's family, as stated in paragraph 5 of the addendum and waited there in the presence of defendant to be paid for his services.

These three findings tended to refute defendant's assertions that he had no knowledge about the transportation of firearms to Puerto Rico and that he did not participate in any conspiratorial conversations. Unfortunately, the other factual matters controverted by defendant were not addressed by the judge: (1) that defendant did not participate in certain conspiratorial meetings; (2) that defendant did not bring Claribel Castillo to his family's place of business; (3) that defendant did not help the pilot make plans for the route to be followed in flying the cocaine to Puerto Rico; (4) that defendant had no knowledge of and did not participate in a conversation between Claribel Castillo and Lazaro Diaz; and (5) that defendant had not lied to feder-

al agents about the purchase of a motor vehicle.[2]

Although we could use the judge's findings as a basis for inferences that might negate some of defendant's other factual contraventions, we think the explicit language of the Rule forbids this: "the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing." This was not done as to the five contraventions listed above, and therefore, the Rule was violated. We have no way of knowing what weight the court gave the controverted matters in deciding to make an upwards departure from the guideline maximum sentence of 16 months imprisonment to the statutory maximum of 48 months imprisonment. We do know from the PSR addendum that there was factored into the guideline computation a two-level increase for lying to federal agents, because this constituted an obstruction of justice.

The district judge seems to have conducted the sentencing hearing on the theory that since he had conducted the six-week trial and was familiar with the evidence presented against defendant, he was not bound by the strictures of the rule. During the government's sentencing presentation, the judge interjected: "Remember I presided over the case. I heard the evidence. I have read the transcripts. I have reviewed my notes and I am quite clear as to this but I will hear you." Prior to sentencing defendant, the judge stated:

> All right, as I have said before, I heard the evidence during the trial and I also took the plea of guilty of this defendant as to the count that we are now before the court and I have reviewed the evidence, the transcript of the case, of my notes and these are the following findings.

■ We do not doubt that the judge had the right to use the evidence presented at the trial as a factor in his sentencing decision. *See United States v. Fuentes–Moreno,* 895 F.2d 24, 26 (1st Cir.1990). But his presiding at the aborted trial did not relieve him of the duty of making a finding as to the allegation of each matter controverted, as required by the Rule. *See id.* at 27 n. 1. In *United States v. Jimenez–Rivera,* 842 F.2d 545, we pointed out the reason for requiring literal compliance with the Rule:

> Rule 32(c)(3)(D) was promulgated, in part, to assure that the defendant is not prejudiced in the future by any factual errors in the PSI. *United States v. Santamaria,* 788 F.2d 824, 829 (1st Cir.1986). As the Advisory Committee note on the rule states, the PSI is heavily relied upon by the Bureau of Prisons and the Parole Commission in making critical determinations relating to custody or parole. *Id.; United States v. Eschweiler,* 782 F.2d 1385, 1387 (7th Cir.1986). To assure accuracy in later decision making, the requirements of the rule must be literally complied with, and failure to do so will result in a remand to the district court. *United States v. Bradley,* 812 F.2d 774, 782 (2d Cir.), *cert. denied,* 484 U.S. 832, 108 S.Ct. 107, 98 L.Ed.2d 67 (1987).

*Id.* at 550–51.

■ When a sentencing judge relies on sources other than the PSR, and which, unlike the PSR, will not be available to prison officials, it is necessary not only that he make specific findings rejecting allegations of factual inaccuracy but that he state as explicitly as he can the basis for such findings.[3] General statements about being familiar with the facts will not suffice.

In sentencing, the district judge must always bear in mind the reason for the Rule:

---

**2.** We have not included in this array defendant's assertion that he did not know the date of the importation. In light of his guilty plea acknowledging that he knew the vehicles he provided were to be used for the importation of drugs, we think his knowledge of the date of importation is irrelevant.

**3.** A reference to the specific portion of the trial transcript or other material relied upon would be helpful.

Rule 32(c)(3)(D) serves the dual purpose of 1) protecting a defendant's due process rights to be sentenced on the basis of accurate information, and 2) providing a clear record of the disposition of controverted facts in the presentence report, which, in turn, reduces the likelihood that subsequent appellate or administrative decisions will be made based on improper or incomplete information.

*United States v. Bruckman,* 874 F.2d 57, 63–64 (1st Cir.1989). We emphasize that in every case where facts in the presentence report are controverted by a defendant, not only are findings necessary, but the Rule mandates that: "A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report...." Such written record serves two purposes: it facilitates appellate review in a uniquely necessary way under the guidelines; and it may have important collateral consequences for the defendant.

In a case such as this where the rule has not been fully complied with, and where there has been a sharp upwards departure from the sentencing guideline, we feel that there must be a new sentencing. As already noted, we do not know what weight was given to the controverted facts not addressed by the district judge. They may very well have been a factor in the upward-departure decision.

In *United States v. Levy,* 870 F.2d 37 (1st Cir.1989), we held that because the length of the sentence seemed to indicate that the court took the disputed facts into account or provided a very strong appearance that it did, a new sentencing hearing was necessary. In so doing, we cited to two prior cases:

> *See United States v. Jimenez–Rivera,* 842 F.2d 545, 552 (1st Cir.1988) (if the sentencing court "relied to any extent on the disputed information," it must "hold a new sentencing hearing that complies with Fed.R.Crim.P. 32(c)(3)(D)"); *United States v. Serino,* 835 F.2d 924, 932 (1st Cir.1987) (remand for resentencing may be appropriate "when it is ambiguous whether the challenged information may

have significantly influenced the nature or length of sentence imposed").
*Id.* at 39.

Under the circumstances, we think it advisable to assign the case to a different judge for resentencing. The sentencing judge may refer to the trial transcript of the aborted trial if he/she thinks it would be helpful. We intimate no opinion as to the propriety of an upward departure from the guidelines.

Sentence vacated, the matter is remanded for resentencing by a different judge.

The motion for bail pending appeal is denied.

*So Ordered.*