**UNITED STATES, Appellee,**

v.

**Obdullio RAMIREZ, Defendant, Appellant.**

**No. 91–1160.**

United States Court of Appeals, First Circuit.

Heard Sept. 13, 1991.
Decided Oct. 31, 1991.

John C. Doherty, Andover, Mass., by Appointment of the Court, for defendant, appellant.

Zechariah Chafee, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief, for appellee.

Before BREYER, Chief Judge,
BOWNES, Senior Circuit Judge, and
LOUGHLIN,* Senior District Judge.

BREYER, Chief Judge.

Obdullio Ramirez pled guilty to conspiring to possess (and possessing) more than 500 grams of cocaine with intent to distribute it. 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B). He now appeals his sentence, and he makes three claims.

■ First, the court adjusted his sentence upward by two levels on account of his being "an organizer, leader, manager, or supervisor" in a criminal activity involving more than one (but fewer than five) persons. U.S.S.G. § 3B1.1(c). He argues that he did not manage or supervise any other person. He concedes that he arrived at a Rhode Island motel in a car with his son, his wife, and a kilogram of cocaine. He claims, however, that his son was not involved in the crime. Rather, he says he had a bad back; he had asked his son to drive the car that day; and no one told his son about the cocaine. Moreover, he adds that his wife, although involved in the crime, was not subject to his supervision or management. To the contrary, he argues, their roles were substantially equal. He points out that after he and his wife entered the motel, his wife came back to the car (apparently with one of the buyers), and that the police subsequently found cocaine hidden in Mrs. Ramirez's clothes. The only way that the court could find that he "supervised" or "managed" at least one other person, he concludes, is by wrongly assuming that the husband, in any such joint enterprise, is the manager of the wife.

The problem for Ramirez is that the district court explicitly stated that its

finding Mr. Ramirez to be a manager or supervisor had nothing to do with the fact that he was married to Mrs. Ramirez.... [T]he court would have under these facts reached the same conclusion

whether Mrs. Ramirez was a stranger. So that has nothing to do with the fact that they're husband and wife.... I hope I didn't convey the impression that I was suggesting that a husband is always the supervisor or leader and the wife is always the follower.... I didn't intend to say that....

The record contains more than sufficient evidentiary support for the court's conclusion that Ramirez "managed" the enterprise. In the defendant's own statement, accepting responsibility for the offense (and thereby qualifying him for the two-level downward adjustment that the court awarded, U.S.S.G. § 3E1.1(a)), he said that "it was my cocaine," that "I was responsible for it," and that "I was responsible for attempting to sell the cocaine." He told the police at the time of his arrest that he had arranged the sale, that he was the person to be paid for the cocaine, and that he knew the buyer, at least by sight. He said that he had arranged for his son to drive the car. He also explicitly told the police that the cocaine did not belong to his wife. Given these facts, we cannot say that the district court's finding that Ramirez played a supervisory or managerial role (in respect to at least one other person) was "clearly erroneous." *United States v. Akitoye*, 923 F.2d 221, 227 (1st Cir.1991) (role-in-the-offense findings reviewed only for clear error). And, Mrs. Ramirez's physical possession of the cocaine, along with her having escorted a buyer to the car, does not compel a contrary legal result.

■ Second, Ramirez claims that the district court improperly ordered him deported. To be specific, the court's judgment reads:

Upon release from confinement it is ordered that the defendant be deported and remain outside the United States in accordance with 18 U.S.C. sec 3583(d).

Ramirez concedes that he is an alien, present in the United States under an amnesty; as such, he is subject to deportation if he is convicted of a drug crime. 8 U.S.C.

* Of the District of New Hampshire, sitting by designation.

§ 1251(a)(11). But, he adds, the court cannot simply order him deported without usurping the power of the Attorney General; deportation requires a proper hearing.

Ramirez is correct about the need for a deportation hearing, but the court's error is one simply of form, not of substance. The relevant statute says that:

> If an alien is subject to deportation, the court may provide, as a condition of supervised release, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation.

18 U.S.C. § 3583. The court intended to follow this statute, for it said at the sentencing hearing,

> [A]s a condition of your supervised release [the court] directs that you be presented to the Immigration and Naturalization Service pursuant to Title 18 of the United States Code, Section 3583(d)3 for deportation. And as a further condition of your supervised release [you must] remain out of the country during that time.

The final judgment, however, did not order Mr. Ramirez *to present himself to the immigration authorities for deportation proceedings*, but simply ordered him deported pure and simple.

In *United States v. Sanchez*, 923 F.2d 236 (1st Cir.1991), we considered a nearly identical problem. We agreed that the court could not order the defendant deported without a deportation hearing. But, we said that such was not the court's intent, and we amended the judgment accordingly. We shall do the same here, and we therefore amend the relevant portion of the district court's judgment to read as follows:

> As a condition of supervised release, upon completion of his term of imprisonment the defendant is to be surrendered to a duly-authorized immigration official for deportation in accordance with the established procedures provided by the Immigration and Naturalization Act, 8 U.S.C. §§ 1101 *et seq.* As a further condition of supervised release, if ordered deported, defendant shall remain outside the United States during that time.

█ Third, Ramirez points out that the district court failed to attach a written record of its findings on contested factual matters to the presentence investigation report, as Fed.R.Crim.P. 32(c)(3)(D) requires. Instead the court attached the record to the *copy* of the PSI that it *sent to this court.* The purpose of Rule 32(c)(3)(D) is to guarantee that the *Bureau of Prisons* has the record of the court's findings. The clerk of the district court should have attached them to the *original* PSI (which is sent to the Bureau of Prisons) as well as to the copy sent here.

We have required strict compliance with Rule 32(c)(3)(D). *United States v. Santana–Camacho*, 931 F.2d 966, 970 (1st Cir. 1991); *see also United States v. Geer*, 923 F.2d 892, 897 (1st Cir.1991); *United States v. Bruckman*, 874 F.2d 57, 65–66 (1st Cir. 1989); *United States v. Jimenez–Rivera*, 842 F.2d 545, 550–51 (1st Cir.), *cert. denied*, 487 U.S. 1223, 108 S.Ct. 2882, 101 L.Ed.2d 917 (1988). And, as we have done in other cases, we shall remand this case for the purpose of attaching these findings to the PSI. *See Santana–Camacho*, 931 F.2d at 970; *Geer*, 923 F.2d at 898; *Bruckman*, 874 F.2d at 65; *Jimenez–Rivera*, 842 F.2d at 552.

The district court's sentence is

*Amended, and as amended, it is affirmed.* The case is remanded for the preparation of appropriate findings in respect to sentencing.