**UNITED STATES of America, Appellee,**

v.

**WILFRED AMERICAN EDUCATIONAL CORPORATION, Defendant, Appellant.**

No. 91–1084.

United States Court of Appeals, First Circuit.

Heard Nov. 7, 1991.

Decided Jan. 9, 1992.

718

Thomas E. Peisch with whom Andrea L. Rocanelli, Conn, Kavanaugh, Rosenthal & Peisch, Boston, Mass., Hughes, Hubbard &

Reed, David A. Lombardero and William R. Stein, Los Angeles, Cal., were on brief for defendant, appellant.

Ralph C. Martin II, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief for appellee.

Before BREYER, Chief Judge, SELYA and CYR, Circuit Judges.

CYR, Circuit Judge.

Defendant–Appellant Wilfred American Educational Corporation ("Wilfred") was convicted and sentenced on nine counts of mail fraud under 18 U.S.C. § 1341.[1] On appeal, Wilfred claims that the maximum preguidelines fines imposed by the district court are invalid due to procedural irregularities. We affirm.

## I

## DISCUSSION

### A. *Imposition of Fines*

Wilfred claims that all nine fines must be set aside because the district court did not comply with 18 U.S.C. § 3622(a) ("Factors relating to imposition of fines"), which allegedly required the sentencing court to consider Wilfred's ability to pay a fine, the impact a fine would have on Wilfred's cred-

itors, students and employees, and the remedial measures taken by Wilfred to prevent future wrongdoing.[2] Since the repealed version of section 3622(a) on which Wilfred relies was inapplicable to all counts of conviction except count 10, *see supra* note 1, we summarily dismiss Wilfred's claims as to the other eight counts.

At sentencing, the district court had before it the presentence investigation report ("PSR") and the sentencing memoranda submitted by Wilfred and the government. The PSR contained financial data provided by Wilfred, detailing its assets, liabilities, income, and expenses. Wilfred's sentencing memorandum and the accompanying letter and affidavits are replete with representations and documentary exhibits bearing on Wilfred's ability to pay a fine, the plight of its creditors in its pending chapter 11 proceedings, and the organizational changes Wilfred effected following its indictment. The government's sentencing memorandum also addressed Wilfred's financial situation, and the accompanying affidavits attested to Wilfred's continuing fraudulent activity.

 We will not presume that the district court declined to consider the relevant section 3622(a) evidence contained in the record. *See United States v. Condon,* 816

---

1. Eight of the nine counts of conviction involved conduct prior to December 31, 1984—each carrying a maximum fine of $1,000. 18 U.S.C. § 1341 (1984) (amended 1989). One count—count 10 in the indictment—involved conduct which occurred on March 22, 1985. Under a now-repealed "alternative fines" statute, which applied to all offenses committed after December 31, 1984, the maximum fine which could be imposed under count 10 was $500,000. *See* 18 U.S.C. § 3623 (1984), *repealed by* Pub.L. 98–473, tit. II, c. II, § 212(a)(2), Oct. 12, 1984, 98 Stat.1987, effective Nov. 1, 1987, pursuant to § 235 of Pub.L. 98–473 as amended Pub.L. 99–217, §§ 2, 4, Dec. 26, 1985, 99 Stat. 1728. The court imposed the maximum fine then permitted by law—$508,000. The district court's sentencing discretion with respect to count 10 was circumscribed by the considerations delineated in the now-repealed § 3622(a), applicable only to offenses committed after December 31, 1984. 18 U.S.C. § 3622 (1984) *repealed by* Pub.L. 98–473, tit. II, c. II, § 212(a)(2), Oct. 12, 1984, 98 Stat.1987, effective Nov. 1, 1987, pursuant to section 235 of Pub.L. 98–473 as amended Pub.L. 99–217, §§ 2, 4, Dec. 26, 1985, 99 Stat. 1728.

2. 18 U.S.C. § 3622(a) provided in relevant part:

 In determining whether to impose a fine and the amount of a fine, the court shall consider, in addition to other relevant factors—

 . . . .

 (3) the defendant's income, earning capacity, and financial resources;

 (4) the burden that the fine will impose upon the defendant, any person who is financially dependent on the defendant, or any other person (including a government) that would be responsible for the welfare of any person financially dependent on the defendant, relative to the burden that alternative punishments would impose;

 . . . .

 (9) if the defendant is an organization, the size of the organization and any measure taken by the organization to discipline any officer, director, employee, or agent of the organization responsible for the offense and to prevent a recurrence of such an offense.

F.2d 434, 436 (8th Cir.1987) ("In light of the available information and absent a record showing that the district court refused to consider the § 3622(a) factors, we will not find the sentence to be an abuse of discretion."). Moreover, our review reveals that the district court did consider all the materials submitted before and during the sentencing hearing. The court entertained extended argument from counsel relating to all aspects of Wilfred's past, current and anticipated financial circumstances, the effect a fine would have on innocent parties, and the remedial measures assertedly undertaken by Wilfred. In the end, the court suspended execution of the fine for one year, or until the entry of an order of relief under chapter 7, whichever came first.[3] The record thus demonstrates that the district court considered the relevant factors delineated under section 3622(a).

■ Wilfred contends, nevertheless, that the court was required to make specific oral or written findings relating to these factors. In *United States v. Penagaricano–Soler*, 911 F.2d 833, 846–47 (1st Cir. 1990), which likewise involved a challenge to the imposition of a fine, we declined to decide whether section 3622(a) requires specific findings. We now join the majority of courts of appeals and hold that specific findings, however helpful to the reviewing court, are not mandated by section 3622(a). *United States v. Hooshmand*, 931

F.2d 725, 737–38 (11th Cir.1991); *United States v. Wright*, 930 F.2d 808, 810 (10th Cir.1991); *United States v. Weir*, 861 F.2d 542, 545 (9th Cir.1988), *cert. denied*, 489 U.S. 1089, 109 S.Ct. 1555, 103 L.Ed.2d 858 (1989); *Condon*, 816 F.2d at 436; *but see United States v. Harvey*, 885 F.2d 181, 182–83 (4th Cir.1989) (specific findings required). As the record in the instant case enables adequate appellate review, Wilfred's section 3622 claim fails.

### B. *Rule 32(c)(3)(D) Claim*

■ Wilfred contends that the district court contravened Federal Rule of Criminal Procedure 32(c)(3)(D) by failing to make a finding as to the accuracy of the financial data Wilfred originally provided to the probation office for inclusion in the PSR.[4] The financial information (as at September 30, 1990) originally submitted by Wilfred was incorporated in substantial part in the PSR. Thereafter, on January 7, 1991, Wilfred submitted an updated balance sheet (as at October 31, 1990) as an exhibit to the Menkes affidavit which accompanied Wilfred's sentencing memorandum.[5] Additionally, counsel to *codefendant* Wilfred Academy, purporting to speak on behalf of Wilfred at sentencing, brought the October 31 balance sheet to the attention of the district court. When the court commented about Wilfred's current assets and liabili-

---

**3.** In light of the thorough consideration given these matters by the district court, we need not address Wilfred's somewhat strained contention that § 3622(a)(4) required the district court to consider the effect a fine would have on Wilfred's creditors, students and employees. Judge Skinner observed, *inter alia,* that he was "greatly in favor of encouraging reorganizations," that he "certainly [didn't] want to burden students," and "if it's true, [that Wilfred is] on an upward track presently, then, by a year from now, it should be able to make that payment without taking it out of the hides of the creditors."

**4.** The applicable version of Criminal Rule 32(c)(3)(D) provided:

> If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission.

Fed.R.Crim.P. 32(c)(3)(D) (applicable to offenses committed prior to Nov. 1, 1987).

**5.** The Menkes affidavit explained:

> We are attaching herewith as Exhibit C a balance sheet at October 31, 1990.... The balance sheets have been adjusted to give effect to the elimination of intercompany receivables and payables that are not expected to be liquidated due to the fact that the Companies are either in bankruptcy under Chapter 11 or have discontinued operations with no assets available to liquidate debt.

ties, counsel to Wilfred Academy "corrected" the court's figures, which were based on the September 30 balance sheet, explaining that the September 30 balance sheet was inaccurate because "some of the assets had to be restated because they ... did not really exist, as a practical matter...." [6]

Wilfred's claim ignores the rule 32(c)(3)(D)(ii) dispensation that no finding is required as to the accuracy of challenged presentence report information where the court determines that "the matter controverted will not be taken into account in sentencing." Confronted with two unaudited balance sheets which the court supportably found lacking in reliability, *see supra* note 6, and faced with conflicting interpretations of the financial data, the district court understandably opined, "[t]he longer I sit here, the less confidence I have in balance sheets...." Wilfred's own counsel even embellished: "I agree with you that the numbers can say anything they want...." Thus, the district court decided to disregard the conflicting balance sheets due to its well-founded and unchallenged skepticism as to their reliability as a means of determining Wilfred's ability to pay a large fine at the time of sentencing.

Rather than attempt to determine Wilfred's precise current financial condition from the financial information submitted by Wilfred, the court prudently preferred to recognize Wilfred's uncertain financial future, as evidenced by the pending chapter 11 proceedings, and suspended execution of the fine for one year, or until an earlier order for relief under chapter 7: "If you are still in business a year from now, it would seem to me the company is in a position to make that payment." The district court thereby expressly determined, in substantial compliance with rule 32(c)(3)(D)(ii), not to rely on the disputed financial information in sentencing Wilfred. *See, e.g., United States v. Wells Metal Finishing, Inc.,* 922 F.2d 54, 58 (1st Cir.1991); *United States v. Gerante,* 891 F.2d 364, 367 (1st Cir.1989); *United States v. Bruckman,* 874 F.2d 57, 64 (1st Cir.1989) (implied findings on disputed factual questions satisfy rule 32(c)(3)(D)).[7]

▋ Wilfred further contends that section 3622(a)(3) required the court to consider the balance sheets in imposing sentence, thus the court could not comply with rule 32(c)(3)(D) without making a finding as to the alleged factual inaccuracy of the September 30 balance sheet. On the contrary,

---

**6.** Note 1 to the September 30 balance sheet is titled "Accounting Principles and Policies" and explains that although the financial statements are *unaudited,* they "have been prepared in accordance with generally accepted accounting principles...." A similar "Note 1" appears on the October 31 balance sheet filed for *codefendant* Wilfred Academy. However, no such note appears on *Wilfred's October 31 balance sheet. Nor* is there any suggestion that *Wilfred's* balance sheets were *audited.* Instead, Note 1 to Wilfred's October 31 statement explains that Wilfred's prepetition accounts receivable and payables were eliminated because "they are not expected to be liquidated." Wilfred admits in its appellate brief that prepetition intercompany receivables are "usual[ly]" included in "consolidated financial statements," but suggests that inclusion was "not appropriate under the circumstances here.... [because] the receivables were in fact worthless...." Wilfred's brief attempts no similar explanation as to what accounting principle would warrant total exclusion of *intercompany* payables, in apparent disregard of normal accounting principles.

**7.** The absence of specific findings precluded strict compliance with rule 32(c)(3)(D). *United States v. Ramirez,* 948 F.2d 66, 68 (1st Cir.1991)

(because "[w]e have required strict compliance with Rule 32(c)(3)(D).... we shall remand this case for the purpose of attaching [a written record of the court's findings on contested factual matters] to the PSI.") (citing cases); *United States v. Santana–Camacho,* 931 F.2d 966, 970 (1st Cir.1991). However, remand for the limited purpose of appending a copy of the court's financial determinations to the PSR would serve no useful purpose in the present case, involving a corporate defendant. "The purpose of Rule 32(c)(3)(D) is to guarantee that the *Bureau of Prisons* has the record of the court's findings." *Ramirez,* at 68. *See also United States v. Geer,* 923 F.2d 892, 897 (1st Cir.1991) (per curiam) (literal compliance with rule 32(c)(3)(D) has been insisted on "if for no other reason than because the pre-sentence report is a document that will follow the defendant throughout the term of his sentence, and will be heavily relied on by prison officials 'in making critical determinations relating to custody or parole.'") (quoting *United States v. Jimenez–Rivera,* 842 F.2d 545, 550–51 (1st Cir.), *cert. denied,* 487 U.S. 1223, 108 S.Ct. 2882, 101 L.Ed.2d 917 (1988)).

section 3622(a) merely required the court to *consider* Wilfred's income, earning capacity and financial resources. The court was not required, either under section 3622(a) or otherwise, to *accept* the financial information presented by Wilfred. As already discussed, the court carefully considered Wilfred's financial condition, supportably found it uncertain, and suspended execution of the fine for one year pending further developments in Wilfred's reorganization proceedings. The decision not to credit Wilfred's dubious, self-serving financial information contravened neither section 3622(a)(3) nor rule 32(c)(3)(D).

## C. *Campbell Affidavit*

Wilfred was convicted of mail fraud based on false documentation relating to the PELL Grant and Student Guaranteed Loan programs administered by the U.S. Department of Education. Wilfred's sentencing memorandum informed the district court of certain organizational changes Wilfred allegedly implemented after its indictment, in order to prevent recurring fraud. The government's sentencing memorandum alleged continuing post-indictment misconduct by Wilfred. One of the government's supporting affidavits was provided by LaRoss C. Campbell, an auditor with the Office of Inspector General at the Department of Education ("OIG") who had headed an OIG investigation conducted at Wilfred's New York City offices between August 7 and September 20, 1990. With Wilfred's full knowledge and cooperation, the OIG inspection team, headed by Campbell, reviewed the records of codefendants Wilfred Academy and American Business Institute, Wilfred's wholly-owned subsidiaries. The Campbell affidavit attests that the OIG inspection disclosed a significant number of Title IV student loan violations, many of which occurred *after 1989.*

The Campbell affidavit was filed with the court on January 7, 1991, the day before the sentencing hearing. At sentencing, the court inquired whether Wilfred had seen the Campbell affidavit. Wilfred's counsel stated that he had received a copy on the previous evening. Wilfred's counsel proceeded to respond to the affidavit, challenging its significance and urging the court to disregard it because "[i]t's got nothing to do with this case." Although Wilfred expressed strong displeasure at the government's eleventh hour submission of the Campbell affidavit, it did not request a continuance.

### (i) Due Process Claim

■ Wilfred contends for the first time on appeal that any reliance on the Campbell affidavit violated due process because Wilfred was not given an adequate opportunity to respond to the statement. We review only for plain error. *United States v. Morales–Diaz*, 925 F.2d 535, 539 (1st Cir.1991) (claim not raised below is subject to plain error review). The due process claim is meritless.

■ The district court enjoys wide discretion as to the information it will receive and rely on at sentencing. *Geer*, 923 F.2d at 897; *United States v. Pellerito*, 918 F.2d 999, 1002 (1st Cir.1990). Nevertheless, a criminal defendant enjoys a due process right not to be sentenced on false information, *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948), and due process therefore requires that the defendant be given an adequate opportunity to refute information relied on at sentencing. *United States v. Diaz–Villafane*, 874 F.2d 43, 47 (1st Cir.), *cert. denied*, 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989); *United States v. Fogel*, 829 F.2d 77, 90 (D.C.Cir.1987); *United States v. Romano*, 825 F.2d 725, 728 (2d Cir.1987); *United States v. Compton*, 704 F.2d 739, 742 (5th Cir.1983).

There is nothing in the record to suggest that the district court relied on the Campbell affidavit. *See United States v. Brown*, 715 F.2d 387, 389 (8th Cir.1983) (no due process right to rebut evidence not relied on by sentencing court). Moreover, even if we were to assume that the affidavit affected Wilfred's sentence in some way, Wilfred was provided an adequate opportunity to respond.

■ Wilfred was on notice that the district court, in imposing sentence, was re-

quired to consider any remedial measures implemented by Wilfred. *See* 18 U.S.C. § 3622(a)(9). The government's sentencing memorandum alerted Wilfred that the government was going to counter Wilfred's alleged remedial measures with evidence of ongoing fraudulent practices at Wilfred's New York school. *See Diaz–Villafane,* 874 F.2d at 47 (due process requires an opportunity to rebut sentencing information; defendant "has no due process right to be informed in advance of the identity of witnesses or of the expected substance of their testimony" at sentencing hearing). Wilfred was provided with a copy of the Campbell affidavit the evening before the sentencing hearing. Although eleventh hour submissions of sentencing information inevitably raise fairness concerns,[8] in the present circumstances there was no deprivation of due process. The Campbell affidavit attested to an investigation conducted on Wilfred's premises, with Wilfred's full knowledge and cooperation, and involving its own files. Significantly, even now Wilfred does not challenge the accuracy of the *information* set forth in the Campbell affidavit. Furthermore, even if Wilfred had been surprised by the information in the Campbell affidavit, it was incumbent upon Wilfred to *request* a continuance. *See Diaz–Villafane,* 874 F.2d at 47 (claim of surprise is "severely undermined, if not entirely undone," by failure to ask for continuance); *see also United States v. Osorio,* 929 F.2d 753, 758 (1st Cir.1991) (where defendant is surprised at trial by the government's delayed disclosure of evidence, failure to ask for continuance is generally considered "an indication that defense counsel was himself satisfied he had sufficient opportunity to use the evidence advantageously"); *United States v. Giltner,* 889 F.2d 1004, 1008 (11th Cir. 1989) (emphasizing, among other factors, defendant's failure to request continuance of sentencing hearing); *United States v. Alexander,* 860 F.2d 508, 512 (2d Cir.1988) (same); *Fogel,* 829 F.2d at 91 (same). Having refrained, for whatever reason, from requesting a continuance, Wilfred cannot complain of the inadequacy of the opportunity it was afforded to respond to the affidavit. Wilfred not only made full use of its opportunity to respond, but these many months later it has yet to provide this court with reason to believe that the Campbell affidavit contained inaccurate information. Thus, there is no legitimate basis for concern that Wilfred was sentenced on false information.[9] *See Giltner,* 889 F.2d at 1008 ("the sole interest being protected at sentencing is the right not to be sentenced

---

**8.** Recent local rule amendments in three jurisdictions within the First Circuit should serve to curb the sort of brinkmanship practiced by both parties in the present case. *See* D.Me.R. 29(a) (PSR to be disclosed to defendant and government at least 30 days before sentencing, parties' objections to PSR material to be filed within 10 days thereafter); D.P.R.R. 418.2B, .4 (same), 418.3 (parties shall file written statement of additional sentencing factors to be relied upon at sentencing within 10 days after disclosure of PSR), and 418.8 (at least 48 hours prior to sentencing, any party desiring to call witnesses at sentencing hearing must inform the court, probation department, and opposing counsel of the witnesses' names and the anticipated length and content of their testimony); D.R.I.R. 40.2(a) (PSR to be disclosed at least 20 days before sentencing, objections due within 10 days after disclosure); *compare* current versions of Fed. R.Crim.P. 32(c)(2) (content of PSR) and 32(c)(3)(A) (time of disclosure of PSR) *with* those applicable to offenses committed prior to Nov. 1, 1987. *See also United States v. Curran,* 926 F.2d 59, 61–62, 63 (1st Cir.1991) (extending policy underlying rule 32(c)(3)(A) to non-PSR material, and holding that any such information

relied on by the sentencing court should be disclosed to the defendant in a timely manner). Although we share the serious concerns expressed by the District of Columbia Circuit in *Fogel,* 829 F.2d 77, 91 (D.C.Cir.1987), we are confident that the district courts will enforce these procedural requirements, or adopt essentially similar practices, so as to preclude even the appearance of "sentencing by ambush." *Id.* (quoting *United States v. Li,* 510 F.Supp. 276 (D.Haw.1981)).

**9.** Although the discussion in Wilfred's appellate brief focuses exclusively on the Campbell affidavit, the brief states as follows: "By considering the Campbell Declaration (*as well as other evidence*) that was not submitted until the evening before the sentencing hearing, the district court denied Wilfred its due process rights." (emphasis added). Ostensibly, this "other evidence" consists of a letter and another affidavit accompanying the government's sentencing memorandum. Wilfred's failure to develop any due process claim as to these documents constitutes waiver. *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.) ("issues adverted to in a perfunctory

on the basis of inaccurate or unreliable information."). Wilfred's due process rights were not violated.[10]

ii. Rule 32(c)(3)(D)

 Finally, Wilfred claims that the district court failed to make a finding concerning its allegation that the Campbell affidavit was inaccurate. Although we have extended the protections of rule 32(c)(3)(D) to evidence not included in the PSR, *United States v. Hanono–Surujun*, 914 F.2d 15, 19 (1st Cir.1990); *see also United States v. Manotas–Mejia*, 824 F.2d 360, 368–69 (5th Cir.), *cert. denied*, 484 U.S. 957, 108 S.Ct. 354, 98 L.Ed.2d 379 (1987), (applying rule 32(c)(3)(D) to disputed material in government's sentencing memorandum); *but see United States v. Rico*, 895 F.2d 602 (9th Cir.1990) (restricting rule 32(c)(3)(D) to PSR material), our review of the sentencing hearing transcript shows that Wilfred never called the accuracy of the Campbell affidavit into question at sentencing. Wilfred's counsel did state that "Mr. Campbell's affidavit talks about a review of 69 student files. He reviewed hundreds of files, if your Honor please." But the Campbell affidavit does not suggest that only 69 files were reviewed. Thus, the quoted statement by Wilfred's counsel did not allege falsity, but merely suggested to the court that the findings discussed in the Campbell affidavit may not have been as significant as the court might otherwise suppose. While this constituted permissible argument, it in no manner triggered the need for a factual finding by the court under rule 32(c)(3)(D).

*Affirmed.*

manner, unaccompanied by some effort at developed argumentation, are deemed waived"), *cert. denied*, 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990), Moreover, the failure to request a continuance would require dismissal of any such due process claim on the merits.

10. Wilfred's appellate brief conclusorily asserts that the government's submission of the Campbell affidavit "circumvented" former Fed. R.Crim.P. 32(c)(3)(A), which provided that the

PSR was to be released to the defendant a "reasonable time" in advance of the sentencing hearing. Even if former rule 32(c)(3)(A) extended to the non-PSR materials in this case, Wilfred has not demonstrated that the source of the information in the Campbell affidavit—the files of Wilfred's wholly-owned subsidiaries—was not readily available to Wilfred well in advance of the sentencing hearing.