USCA1 Opinion

 

 June 13, 1994 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 93-1957 UNITED STATES, Appellee, v. GUIDO IMPEMBA, Defendant, Appellant. ____________________ ERRATA SHEET The opinion of this Court issued on April 29, 1994 is amended as follows: In the two sentences beginning at the bottom of page 3 and carrying over to the top of page 4, the following language shall be deleted: "it is doubtful that the Maine court possessed jurisdiction inasmuch as Impemba was in custody in Wisconsin. Moreover," These two sentences shall be combined into one sentence, reading as follows: "Alternatively, to the extent his motion is viewed as a habeas petition under 28 U.S.C. 2255, Impemba arguably lacked standing to pursue such relief prior to expiration of his 'noncontingent' prison term and/or exhaustion of his administrative remedies." April 29, 1994 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1957 UNITED STATES, Appellee, v. GUIDO IMPEMBA, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Gene Carter, U.S. District Judge] ___________________ ____________________ Before Torruella, Selya and Stahl, Circuit Judges. ______________ ____________________ John C. McBride and McBride and Associates on brief for _________________ _________________________ appellant. Jay P. McCloskey, United States Attorney, and Margaret D. __________________ ____________ McGaughey, Assistant United States Attorney, on brief for appellee. _________ ____________________ ____________________ Per Curiam. Guido Impemba appeals from a district court __________ order denying his motion to vacate a pair of criminal fines imposed nearly ten years ago. For the following reasons, we summarily affirm under Loc. R. 27.1. I. In 1983 and 1984, Impemba participated in a wide-ranging scheme to transport approximately twenty-five tons of marijuana from Colombia to Maine aboard the freighter "Adina." He was later convicted on two counts of (1) conspiracy to possess marijuana with intent to distribute and (2) conspiracy to import marijuana. At sentencing, held on December 20, 1984,1 Impemba received a fifteen-year prison term and a $50,000 committed fine on Count I, and a concurrent five-year prison term and a concurrent $15,000 committed fine on Count II. This court thereafter affirmed his conviction (along with those of six of his codefendants). See United States v. Cresta, 825 F.2d 538 (1st Cir. 1987), ___ _____________ ______ cert. denied, 486 U.S. 1042 (1988). ____________ In March 1993, Impemba filed the instant motion to vacate his fines in Maine district court. He there complained that the sentencing court had imposed the fines without considering his financial status. He further alleged that he had been indigent in 1984 and had remained so ever since--with the result that, because of the "committed" nature of the fines, he was faced with "extended imprisonment" due solely to his indigency, in violation of constitutional guarantees. The district judge summarily ____________________ 1. The government's brief contains mistaken references to 1985 as the year of sentencing. denied this motion shortly after its filing. Five months later, in an independent action in the judicial district in which he was incarcerated, Impemba obtained relief from the "committed" nature of his fines. Based on his oath of indigency, a magistrate-judge sitting in the Western District of Wisconsin relieved him "from payment of the committed fine as a condition of his release from prison." This order made clear, however, that Impemba remained obligated to pay the fines and that the government could pursue civil remedies to obtain payment. While this action has mooted part of his motion to vacate, Impemba on appeal continues to pursue his challenge to the validity of the fines themselves. II. Impemba has not explained, and the government has properly questioned, the jurisdictional basis for his requested relief.2 For example, to the extent his motion is viewed as one to correct sentence under former Fed. R. Crim. P. 35(a), it was untimely. As he is contending not that the sentence was "illegal," but rather that it was "imposed in an illegal manner," any such motion was subject to the 120-day filing period specified in Rule 35(b). Alternatively, to the extent his motion is viewed as a habeas petition under 28 U.S.C. 2255, Impemba arguably lacked standing to pursue ____________________ 2. Impemba's brief contains no statement of subject matter and appellate jurisdiction, in violation of Fed. R. App. P. 28(a)(2). -4- such relief prior to expiration of his "noncontingent" prison term and/or exhaustion of his administrative remedies. United States v. Levy, 897 F.2d 596, 598 (1st Cir. 1990). In _____________ ____ any event, any such request would now be moot in light of the Wisconsin court's action. Finally, to the extent his motion is viewed as a request for remission under former 18 U.S.C. 3573, the action was plainly unauthorized. As explained in United States v. Linker, 920 F.2d 1, 1-2 (7th Cir. 1990), a ______________ ______ version of this statute permitting a defendant to seek remission of a fine was in existence for only six weeks in 1987. A newer version, which took effect on December 12, 1987 and which applies to all fines "irrespective of the date of imposition," permits such relief only upon "petition of the Government." Yet we need not resolve these matters (nor need we address the government's related contention that Impemba waived the issue by failing to raise it on direct appeal), inasmuch as the motion to vacate is obviously lacking in merit. Impemba principally relies on a former version of 18 U.S.C. 3565(a)(1) which provided as follows: If the court finds by a preponderance of the ___________________________________________________ information relied upon in imposing sentence that ___________________________________________________ the defendant has the present ability to pay a fine ___________________________________________________ or penalty, the judgment may direct imprisonment ___________________________________________________ until the fine or penalty is paid, and the issue of _________________________________ execution on the judgment shall not discharge the defendant from imprisonment until the amount of the judgment is paid. -5- (Emphasis added.) The crux of his argument is that the sentencing court lacked any information to support a conclusion that he had the "present ability" to pay the fines in question. This contention fails for the simple reason that the underscored language did not apply to Impemba's case. Added by the Criminal Fine Enforcement Act of 1984, Pub. L. No. 98-596, 2(2), 98 Stat. 3134, this language applied only to "offenses committed after December 31, 1984." Id. 10, 98 Stat. 3138. The version of 3565(a)(1) that ___ governed Impemba's case contained no requirement that imposition of a committed fine be dependent on a finding of "present ability" to pay.3 Under the law applicable to Impemba, therefore, the sentencing court was under no statutory obligation to consider ability to pay. Indeed, before the Criminal Fine Enforcement Act (and thereafter the Sentencing Guidelines) ____________________ 3. This earlier version read simply as follows: Where the judgment directs imprisonment until the fine or penalty imposed is paid, the issue of execution on the judgment shall not discharge the defendant from imprisonment until the amount of the judgment is paid. Impemba makes reference to two other statutes that specify various factors (including ability to pay) that a court must consider in imposing a fine. See 18 U.S.C. ___ 3622(a), 3572(a). As he acknowledges, however, neither of these applied to his case. Section 3622 was applicable only to offenses committed after December 31, 1984. See, e.g., ___ ____ United States v. Wilfred Amer. Educ. Corp., 953 F.2d 717, 719 _____________ _________________________ n.1 (1st Cir. 1992). Section 3572 took effect on November 1, 1987. -6- took effect, a sentencing court had virtually unreviewable discretion in imposing a sentence within the statutory maximum. See, e.g., United States v. Dominguez, 951 F.2d ___ ____ _____________ _________ 412, 416 (1st Cir. 1991) (summarily rejecting allegedly indigent defendant's challenge to pre-Guidelines fine), cert. _____ denied, 112 S. Ct. 1960 (1992). A "narrow exception" to this ______ rule permitted the overturning of a sentence "where the facts indicate that the court below adopted a rigid, mechanistic approach to sentencing, and failed to consider the individual mitigating circumstances of each defendant." United States _____________ v. Jimenez-Rivera, 842 F.2d 545, 548 (1st Cir.), cert. ______________ _____ denied, 487 U.S. 1223 (1988). Yet the sentence here is ______ immune from any such challenge. The district court properly considered the individual circumstances presented--observing, for example, that Impemba was "one of the principal representatives of the group anticipating profit in substantial amounts," and later rejecting the government's recommendation that consecutive sentences be imposed. We also note that Impemba himself was largely responsible for the absence of precise financial information--having refused (apparently on advice of counsel) to submit a financial statement to the probation department in the belief that such request was an invasion of privacy. Affirmed. ________ -7-