86 F.3d 1147
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES of America, Appellee,
v.
Cristobal SORIANO, Defendant, Appellant.
 No. 95-2327.
 United States Court of Appeals, First Circuit.
 May 3, 1996.
 
 Appeal From the United States District Court for the District of Rhode Island [Hon. Ronald R. Lagueux, U.S. District Judge]
 William C. Dimitri with whom Dimitri & Dimitri was on brief for appellant.
 Sheldon Whitehouse, United States Attorney, with whom Margaret E. Curran and Zechariah Chafee, Assistant United States Attorneys, were on brief for the United States.
 D.R.I.
 AFFIRMED.
 Before CYR, BOUDIN and LYNCH, Circuit Judges.
 PER CURIAM.
 
 
 1
 "Cristobal Soriano," whose real name is David De LaCruz Hiciano, was arrested with two others, Rafael Vidal and Johana Ovando, in August 1994, after selling crack cocaine to an undercover agent. He was charged with conspiring to distribute drugs, 21 U.S.C. § 846, and one count each of possession with intent to distribute and distribution, 21 U.S.C. § 841(a)(1). On March 8, 1995, De LaCruz pled guilty to all counts. The quantity of drugs triggered a mandatory minimum ten-year sentence. 21 U.S.C. § 841(b)(1)(A)(iii).
 
 
 2
 De LaCruz suffers from a terminal illness and likely will not survive the mandatory minimum term. At sentencing in November 1995, De LaCruz sought relief under the "safety valve" provision, 18 U.S.C. § 3553(f) and U.S.S.G § 5C1.2, which would allow him--if he met the five criteria--to avoid the mandatory minimum and be sentenced under the guidelines. The court calculated his guidelines range to be 87-108 months (including probable departures), and De LaCruz asked for several additional departures to further reduce his sentence.
 
 
 3
 The government argued that De LaCruz was ineligible for relief under section 3553(f) because he had not made the disclosure of information about the offenses required by subsection (5). The court disagreed but found that De LaCruz failed a different condition--subsection (4)--because he controlled the drug enterprise. The safety valve is aimed at less culpable defendants and applies only if "the defendant was not an organizer, leader, manager, or supervisor of others in the offense." 18 U.S.C. § 3553(f)(4). The main issue on appeal is whether this fact-bound determination was clear error. United States v. Montanez, No. 95-2096, slip. op. at 10 (1st Cir. Apr. 24, 1996). The pertinent evidence is as follows.
 
 
 4
 On August 21, 1994, an agent went to an apartment at Cherry Street in Pawtucket, Rhode Island, and bought crack from Vidal and another unidentified man. The agent went back later that month to buy more. This time only Vidal was present; he telephoned De LaCruz, who apparently had the drugs at another location. While waiting for De LaCruz to arrive, the agent gave Vidal $50 in marked bills.
 
 
 5
 De LaCruz arrived a short time later with Ovando and gave the agent crack that the agent had already paid for. Ovando explained to the agent that she and De LaCruz would be moving to a new address and that from now on the agent should go there if the agent wanted more drugs. The agent left. Minutes later the defendants were arrested. The $50 that the agent had given Vidal was found on De LaCruz.
 
 
 6
 Agents subsequently searched an apartment at Rand Street in Central Falls, Rhode Island. This apartment was leased to Ovando; and she and De LaCruz had been at the apartment (and under surveillance) on August 21 when Vidal telephoned him to arrange the delivery. This search revealed scales, plastic bags and other drug-trade paraphernalia and also evidence indicating that De LaCruz also occupied or used the apartment. In an adjoining basement, agents found a stash of 73.8 grams of crack and $3900 in cash--including $60 of the $100 in marked bills the agent had given Vidal during the first buy.
 
 
 7
 At sentencing De LaCruz insisted that he and Vidal were equal partners and that Vidal also had access to the drugs and money at Ovando's apartment. In fact Vidal's car was registered at that address. But the district court concluded that De LaCruz was "in charge," finding that De LaCruz stored the drugs in the Rand Street apartment he shared with Ovando and supplied them to Vidal, who merely arranged the sales. Later in the hearing, the district court said:
 
 
 8
 If he wasn't the leader I don't know who was. This is a three person operation and he was in charge. It was his operation. What more can you do with it? I can't, I've wrestled with it and I can't. I'd like to give him every opportunity I can to go back to the Dominican Republic and die with his relatives. But he's going to have to die in a federal penitentiary, that's what it comes to. And this is costly. This is costly to the United States government.
 
 
 9
 ............................................................
 
 
 10
 ....................
 
 
 11
 * * *
 
 
 12
 But that's the way it works. I don't have the discretion to just throw away the guidelines or throw away Congress' mandatory minimum sentences and so I have to apply them.... I have no choice, I have to apply the mandatory minimum which is 120 months in prison.
 
 
 13
 Conceivably, the district court could have come out the other way. The probation officer recommended applying the safety valve provision, and the prosecutor expressed some reservation at sentencing about calling De LaCruz the "leader." But the final determination is for the district court, and it was rational to conclude that De LaCruz--who held the drugs and money--was in charge. De LaCruz's equal-partners gloss is plausible but, on appeal, he bears the burden to show clear error and cannot prevail simply by putting forth a reasonable alternative interpretation.
 
 
 14
 This would resolve matters entirely but for the district court's brief comment, "[i]f he wasn't the leader I don't know who was." In the abstract, this might imply a belief that someone is necessarily the leader in a group sale. Such a belief would be error, since equal partners cannot be deemed leaders unless one or both controlled others. See U.S.S.G. § 3B1.1; United States v. Frankenhauser, 1996 WL 154266, at * 11 (1st Cir. Apr. 9, 1996). We think it far more likely that the comment was merely a way of emphasizing the court's view that De LaCruz was in fact the leader.
 
 
 15
 De LaCruz may share this latter view because he does not raise this issue on appeal and our review is accordingly limited to "plain error." United States v. Olano, 113 S.Ct. 1770, 1777-79 (1993). It may be doubtful that an ambiguous statement could qualify as plain error although we might still be entitled to seek clarification. But relief under Olano still requires a miscarriage of justice or the like. 113 S.Ct. at 1779. For a reason not mentioned by either the district court or the government, such a conclusion would be hard to reach in this case.
 
 
 16
 Despite De LaCruz' attempt to exculpate Ovando, her own role in the August 24 sale indicates that she played a minor role in the transaction. Indeed, Ovando herself pleaded guilty and De LaCruz told his probation officer that he was "sorry for getting Johana Ovando implicated in something that reaped her no benefit." If he did not lead Vidal, De LaCruz certainly appears to have led Ovando. See United States v. Ramirez, 948 F.2d 66, 67 (1st Cir.1991) (husband deemed leader where wife a minor participant).
 
 
 17
 This is a distressing case. The offenses underlying the judgment are serious, but few would think that they warranted having the defendant die in prison rather than in the care of his family in his own country. But given the mandatory minimum prescribed by Congress, it appears that De LaCruz' only avenue for relief is executive clemency.
 
 
 18
 Affirmed.