Cristino ARRIAGA–TORRES, Petitioner,

v.

UNITED STATES of America, Respondent.

Civil No. 96–1188(JP)
(Crim. No. 93–72[JP] ).

United States District Court,
D. Puerto Rico.

Feb. 10, 1997.

Cristino Arriaga–Torres, Pensacola, Florida, Pro Se.

Sonia Torres, Assistant United States Attorney, Hato Rey, PR, for Defendant.

## MEMORANDUM OPINION AND ORDER

PIERAS, District Judge.

*Procedural Background*

On February 9, 1993 a criminal complaint was sworn before a magistrate judge charging petitioner Cristino Arriaga–Torres ("petitioner") along with others with participation in a drug conspiracy as a result of which they were arrested pursuant to an undercover sting operation. On February 10, 1993, attorneys José A. "Abi" Lugo and Rafael Anglada–López filed an appearance as attorneys on behalf of petitioner and codefendant Raúl Adorno–Quilez. Shortly thereafter, on February 19, 1993, a Preliminary and Detention Hearing was held before a magistrate-judge who found probable cause and entered an order of detention pending trial. On February 25, 1993 a one-count indictment was returned charging petitioner along with others, with conspiring to possess cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Docket No. 1).[1] He was arraigned on March 3, 1993. (Docket No. 5).

Motion for revocation of the magistrate-judge's order of detention and requesting a hearing were filed on petitioner's behalf. (Docket Nos. 3–4). Petitioner was successful and the Court revoked the decision to detain, setting conditions for his release. (Docket Nos. 22, 24, 25, 28).

A comprehensive discovery motion (Docket No. 16) and Motions to Suppress items seized from his home (Docket No. 29), recordings (Docket No. 30), and the search warrant (Docket No. 31), as well as a Memorandum of Law (Docket No. 53), were also filed on petitioner's behalf. (Docket No. 34). A Suppression Hearing was held on July 13, and August 23, 1993 (Docket Nos. 55–56, 58–59, 63), and, on August 8, 1993, the magistrate-judge entered a Report and Recommendation partially granting suppression of certain recordings (Docket No. 57); denial was recommended as to all other grounds for suppression. (Docket Nos. 61–62).

On October 25, 1993, the Court entered an Opinion and Order adopting the magistrate-judge's recommendations. (Docket No. 78). Shortly thereafter, on November 2, 1993, pursuant to plea negotiations with the United States, petitioner entered a motion for change of plea, and a petition to enter a plea of guilty. (Docket Nos. 83 and 92). The Plea Agreement between the United States and petitioner, as well as the Government's Version of the Facts, were also filed. (Docket Nos. 93 and 95). On November 1, 1993, after a change of plea hearing was held and upon approval by the Court, a plea of guilty as to the only count in the indictment was entered on petitioner's behalf; petitioner was allowed to remain on release pending sentence. (Docket No. 94).

With the benefit of a Presentence Report (Docket No. 107), and having examined and approved of petitioner's objections regarding same (Docket No. 105), the Court sentenced petitioner to serve a term of ninety-six (96) months of imprisonment and five years of supervised release as to the only count of conviction; a fifty dollar ($50) special mone-

---

1. References are to the criminal docket unless otherwise indicated.

tary assessment and a ten-thousand dollar ($10,000) fine were also imposed. Petitioner was granted the privilege of voluntary surrender. Judgment was entered accordingly. (Docket Nos. 113a–113b).

Petitioner did not appeal from his judgment of conviction and sentence. On February 14, 1996, he moved for vacation, setting aside or correction of his sentence pursuant to 28 U.S.C. § 2255. (Docket No. 130; Civil Docket No. 1).

### Petitioner's 2255 Motion

In his 2255 motion petitioner alleges that he unknowingly pled guilty and that counsel were ineffective in failing to advise him, due to their unfamiliarity, of the statutory and guideline penalty provisions, to investigate potential defenses, to raise aberrant behavior, double jeopardy, minor participation, ability to pay a fine, and that he be sentenced below the statutory minimum. Petitioner requests that a hearing be granted and counsel appointed to represent him.

Petitioner submits that the following grounds warrant setting aside his judgment of conviction due to ineffective assistance of counsel:

(1) Counsel lacked organization and true conviction in the case.

(2) Counsel should have accepted an original plea offer of 5 years.

(3) Counsel was unaware of the sentencing and statutory provisions applicable to the case:

(a) Counsel should have argued the applicability of a 4–point reduction for acceptance of responsibility, an additional reduction due to the fact that it was a reverse sting operation, a 2–point reduction for his minor participation, and a 4–point reduction for his minimal role in the offense.

(b) Counsel should have argued that the offense conduct was aberrant, as same was unique as compared to petitioner's exemplary citizenship and it being his first offense, as grounds for downward departure. Counsel's failure to do so left the Court unaware that it could in fact depart downward.

(c) Counsel should have sought the applicability of the safety valve.

(d) Petitioner was imposed a fine without a hearing concerning his ability to pay.

(4) Counsel failed to raise a double jeopardy defense (that the criminal prosecution constituted double jeopardy in view of the civil forfeiture of certain properties, instead advising that challenging forfeiture was a "waste of time.").

The United States has duly filed an opposition to petitioner's motion (Civil Docket No. 8), in view of which the Court hereby **DENIES** petitioner's motion based on the reasons set forth in the following,

### MEMORANDUM OF LAW

█ It is well-settled that collateral relief under Section 2255 is available to correct a legal error made during a conviction or sentencing which is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974). A petition under Section 2255 cannot do service for an appeal. *Theodorou v. United States*, 887 F.2d 1336, 1339–40 (7th Cir.1989). Absent the requisite showing of cause for petitioner's failure to take direct appeal, and the resulting prejudice, collateral attack of the sentence is procedurally barred under Section 2255. *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Notwithstanding the procedural bar, petitioner's motion is amenable to denial on the merits.

Petitioner's sentence followed the stipulation reached by the parties in the Plea Agreement. (Docket No. 93). Paragraph 2 of the Plea Agreement between the parties, which was duly approved by the Court, specifically states as follows:

The parties stipulate that the proper sentence in this case is a term of imprisonment of eight (8) years, in accordance with the Sentencing Guidelines, Title 18, United States Code, Section 3551 et seq., and particularly commentary 17 to Section 2D1.1 of the Sentencing Guidelines which provides for a downward departure in cases

such as the one before this court, as amended effective November 1, 1993. The United States expressly agrees that Cristino Arriaga Torres be sentenced to a term of imprisonment of ninety six (96) months. Because this agreement is of the type qualified in Subdivision 11(e)(1)(C) of the Federal Rule of Criminal Procedures (sic), which states "(C) agree that a specific sentence is the appropriate disposition of the case", the court may accept or reject the agreement or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report.

Plea Agreement at 2 ¶ 2 (Docket No. 93). Petitioner acknowledged the stipulation to recommend an 8–year term of imprisonment personally before the Court, by signing the Plea Agreement, which was approved only after the Court determined that it was entered into freely and voluntarily by him, and spelled out by petitioner's own hand in his answer to question number 29 of the Petition to Enter a Plea of Guilty, where he wrote, in reference to the Plea Agreement as he understood it, "The prosecution and the defense have stipulated that the sentence will be of 8 years" (translation ours).[2]

■ Petitioner freely stipulated the appropriate length of his sentence with the United States, a stipulation which was ultimately accepted by the Court. Counsel fully demonstrated that they were well-versed in the applicable law, including the Sentencing Guidelines, ably negotiating a Plea Agreement which was favorable to petitioner, who is serving 8 years in prison but was exposed to statutory imprisonment range of 10 years to life in prison. Counsel also filed pertinent "Objections and/or Clarifications to PSI Report" (Docket No. 105) which the Court addressed at sentencing. (Sentencing Hearing Transcript at 5—Civil Docket No. 8, Attachment "D").

Petitioner was fully aware of the applicable Sentencing Guidelines, as per the Plea Agreement and during the change of plea hearing before the Court. Also, although, as the United States indicates (Civil Docket No.

8 at n. 2), the change of plea hearing has not been transcribed, the Minutes of Proceedings clearly indicate that petitioner "was apprised as to the sentencing guidelines applicable in this case" (Docket No. 94) prior to the acceptance of his guilty plea, as well as at the time of sentencing. (Sentencing Hearing Transcript at 4–6—Civil Docket No. 8, Attachment "D").

Petitioner, for the first time, complains of his attorneys' representation and designates as ineffective assistance their decision not to request role-in-the-offense, minor participation, and acceptance of responsibility reductions. It stands to reason that the parties took these matters into consideration when they negotiated the Plea Agreement, part of which stipulates a sentence below the mandatory statutory minimum term of ten years. This negotiation rendered results which, in practical terms, are equivalent to a downward departure.

Petitioner's participation in the offense was far from minor. According to the Government's Version of the Facts (Docket No. 95), and as per petitioner's own narration of his involvement in the offense during the change of plea hearing (Docket No. 94), the evidence would have supported a contrary finding, as petitioner proved to be instrumental in carrying out the drug negotiation. Although, during the change of plea hearing, petitioner objected to the amount of drugs in the United States' oral recitation of the Government's Version of the Facts (Docket Nos. 94–95), the fact remains that, during the meeting at which the cocaine was shown to codefendant González, he left with a sample "to discuss the transaction with the person who was going to provide the money." (Docket No. 95 at 2). Thereafter, codefendants González and Adorno both arrived at petitioner's residence. At some point, codefendant Adorno was observed exiting petitioner's residence with a shoe box. The box was found to contain $40,000 after its seizure upon codefendant González' arrest at the site of the transaction. Petitioner and codefendant Adorno, who had followed codefendant González in another vehicle, were also arrested;

---

**2.** Question 29 of the Petition to Enter a Plea of Guilty was answered in Spanish, "El fiscal y la defensa han estipulado que la sentencia será de 8 años."

an additional $31,000 was found in a paper bag.

It stands to reason that petitioner was the source or close to the source of the money for the transaction. The other codefendants converged in his residence and a codefendant exited same carrying the box later found to contain $40,000, as same was seized from a vehicle used to transport the codefendant to the transaction site.

■ In light of the stipulated sentencing recommendation, the Government's Version of Facts accepted by petitioner, the supporting case law, and the applicable statutory minimum, it would have been futile to interpose role-in-the-offense downward adjustments. Contrary to petitioner's self-serving argument, offense conduct cannot be classified as aberrant behavior simply because it is a first offense.

■ On the other hand, contrary to petitioner's assertions, his guideline calculation included a three-point downward adjustment for acceptance of responsibility, the maximum reduction available under U.S.S.G. § 3E1.1. Petitioner's label of ineffective assistance to his attorney's failure to argue that a 4-point reduction was warranted is simply frivolous, as U.S.S.G. § 3E1.1 does not allow for such a reduction.

Petitioner also argues that he should have received the benefit of the "safety valve" provisions of the Violent Crime Control Act of 1994 ("the Act"), P.L. No. 103–322, 108 Stat. 1796, codified at 18 U.S.C. § 3553(f), but Congress made this measure applicable to all sentences imposed on or after the 10th day beginning after the date of enactment of the Act. Section 80001(c). Because the Act was signed into law by the President on September 13, 1994, the "safety valve" provisions applied to all sentences imposed on or after September 23, 1994. These provisions were incorporated into the Sentencing Commission, *Guidelines Manual*, at U.S.S.G. § 5C1.2 (Nov. 1, 1994), and simply did not exist at the time of petitioner's sentence, March 3, 1994. (Docket No. 113a).

■ Petitioner also claims that counsel were ineffective in failing to object to the Court's imposition of a fine as part of his sentence. He alleges that the Court could not validly impose a fine without a hearing and specific findings regarding his ability to pay. Further, petitioner states that, according to *United States v. Bauer*, 19 F.3d 409 (8th Cir.1994), imposition of a committed fine was not contemplated in the Sentencing Guidelines.

First of all, neither the Sentencing Hearing nor the judgment itself reflects that the Court directed petitioner's imprisonment until satisfaction of the fine. (Sentencing Hearing Transcript—Civil Docket No. 8, Attachment "D"; Docket Nos. 113a–113b). On the contrary, according to the Minutes of Proceedings, the Court advised petitioner that,

> The defendant shall pay the imposed fine with interest as required by law during the period of supervision as directed by the U.S. Probation Officer and shall notify the U.S. Attorney's Office as well as the probation officer of any change of name or address that occurs before the full amount has been paid.

(Docket No. 113a at 2 ¶ 4). Petitioner was aware that imposition of a fine was statutorily allowed and within the sound discretion of the Court, as stated in the Plea Agreement. (Docket No. 93 at 1 ¶ 1).

Moreover, specific findings as to petitioner's ability to pay were not necessary. *See, United States v. Wilfred American Educational Corp.*, 953 F.2d 717, 719–20 (1st Cir.1992) (interpreting former 18 U.S.C. § 3622—Factors relating to imposition of fines). There was sufficient evidence of petitioner's earning capacity in the record, indicating that petitioner will be, during the period of his supervision, financially able to pay the fine: petitioner was represented by retained counsel; he proffered that he owned a real estate property appraised at $191,000, that he has always been employed and that, despite the fact that he reached only the 8th grade in school, was a successful entrepreneur; at the time of the commission of the offense he proffered monthly legitimate earnings of three to four thousand dollars, duly reported in his income tax returns. (Docket No. 3).

Moreover, the Court properly relied on the information available in petitioner's Presentence Report (Docket No. 107) which listed his assets, liabilities and cash flow, as follows:

| | |
|---|---|
| Total Assets and Net Worth | $211,000.00 |
| Total Income | 2,400.00 |
| Total Expenses | 1,075.00 |
| Net Monthly Cash Flow | 1,325.00 |

Based on the financial profile information provided by the petitioner the Probation Officer correctly determined that it appeared that petitioner had the ability to pay a fine.

■ Petitioner provides no cognizable basis to set aside the ten thousand dollar fine. "Following Congress' lead, the sentencing guidelines provide that the district court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is unlikely to become able to pay any fine." *United States v. Savoie*, 985 F.2d 612, 620 (1st Cir.1993) (internal citations omitted); U.S.S.G. § 5E1.2(a), (f) (Nov. 1, 1993). Viewing the record as a whole, any argument that petitioner's "is unlikely to become able to pay any fine" would have been frivolous, even in the face of indigency at the time of sentencing. *United States v. Hagmann*, 950 F.2d 175, 185–86 (5th Cir.1991), *cert. denied*, 506 U.S. 835, 113 S.Ct. 108, 121 L.Ed.2d 66 (1992).

Lastly, as to the argument concerning the forfeiture action underlying petitioner's double jeopardy claim, on June 14, 1996, the Court had ordered petitioner to include the case number corresponding to said action. (Civil Docket No. 10). In his Reply, however, petitioner failed to include the corresponding case number. It appears that the forfeiture action, if any, alluded to by petitioner was administrative, not judicial. Neither petitioner nor the United States provides a civil case number reference, and the Court's records reflect no such filing.

In fact, the United States submits that, although a notice of forfeiture as to the jewelry seized at petitioner's home was mailed on October 8, 1994, same was returned to him. As to the other jewelry, the one seized from petitioner's person, the United States does not squarely confront the allegations, stating only that petitioner has not shown that its return was ever requested. The United States' response is equally unenlightening as to the seizure of cash in the amount of $40,065.00.

■ Regardless of Counsels' failure to raise, as petitioner would have them on hindsight, a double jeopardy argument based on the administrative forfeiture of petitioner's belongings and his criminal prosecution, can hardly constitute ineffective assistance in view of the Supreme Court's decision in *United States v. Ursery*, — U.S. —, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). In *Ursery, id.*, the Supreme Court reversed the decisions in both *United States v. Ursery*, 59 F.3d 568 (9th Cir.1995) and *United States v. $405,089.23 U.S. Currency*, 33 F.3d 1210 (9th Cir.1994), two cases in which petitioner heavily relies as supportive of his double jeopardy claim. The Supreme Court held:

> It is well settled that Congress may impose both a criminal and a civil sanction in respect to the same act or omission. By itself, the fact that a forfeiture statute has some connection to a criminal violation is far from the clearest proof necessary to show that a proceeding is criminal.

> We hold that these in rem civil forfeitures are neither punishment nor criminal for purposes of the Double Jeopardy Clause.

*Ursery*, — U.S. at —, 116 S.Ct. at 2149 (internal quotations and citations omitted).

**WHEREFORE** the Court finds that **DENIAL** of petitioner's 2255 motion is appropriate on all grounds.

**IT IS SO ORDERED.**